STATE of Utah, Plaintiff and
Respondent,

v.

Raymond Jeffrey JOHNSON,
Defendant and Appellant.

No. 20562.

Supreme Court of Utah.

June 30, 1987.

Rehearing Denied Nov. 24, 1987.

David L. Wilkinson, Kimberly K. Hornak, Salt Lake City, for plaintiff and respondent.

Joseph C. Fratto, Jr., Salt Lake City, for defendant and appellant.

STEWART, Associate Chief Justice:

Defendant Johnson was convicted of aggravated robbery, aggravated assault, and theft. Johnson appeals, seeking reversal of his conviction and a new trial. Four issues are presented on appeal: (1) whether the search of Johnson's automobile went beyond the constitutional scope of an inventory search, (2) whether there was sufficient evidence with which to convict Johnson of aggravated assault, (3) whether a jury instruction regarding the possession of stolen property unconstitutionally shifted the burden of proof to Johnson, and (4) whether, under the circumstances of this case, theft is a lesser included offense of aggravated robbery. We affirm in part and reverse the theft conviction.

The evidence, when viewed in the light most favorable to the jury verdict, shows that on August 18, 1984, Johnson and a male accomplice entered Oakwood Jewelry in Salt Lake County. The first to enter forced the lone sales clerk at gun point into a bathroom in the back of the store. While one of the men was collecting jewelry, a female customer entered the store. The customer was forced to the rear of the store by one man, and the other man forced her at gun point into the bathroom with the sales clerk. The sales clerk and the customer were repeatedly told not to look at the face of either Johnson or his accomplice. Shortly thereafter witnesses observed Johnson and another man outside Oakwood Jewelers walking very quickly and carrying a large garbage bag with small objects bulging from the bag. Johnson was positively identified by these witnesses at trial. Moreover, the witnesses testified that another man and a woman were waiting in an automobile which had the engine running, the man in the driver's seat and the woman in the front passenger seat, and that Johnson and his accomplice hurriedly got into the back seat and the car sped away. Johnson's automobile was identified as the automobile in which the individuals left.

On August 24, 1984, two officers from the Los Angeles Police Department on routine patrol at the Pink Motel in Los Angeles observed Johnson in his automobile in the parking lot operating illegal hydraulic lifts. The officers also observed a woman, Jeanna Salazar, walk out of Room 10 of the Pink Motel and get into the automobile with Johnson. Salazar appeared to be under the influence of an opiate. The officers also observed two other individuals, Johnson's brother and his girlfriend, in Room 10 administering drugs to themselves.

Soon after Salazar got into the car with Johnson, the two started to leave. Johnson's brother and his girlfriend approached the car at about the same time that the police officers stopped the car and observed marijuana inside in plain view. They also observed track marks on the insides of the individuals' arms and placed all four under arrest for being under the influence of a controlled substance.

A .38 caliber revolver and a substantial amount of jewelry were recovered from Room 10 of the Pink Motel. The officers also found jewelry on the suspects and .38 caliber ammunition in the purse of one of the suspects. Johnson's car was impounded and an inventory search was conducted in compliance with the Los Angeles Police Department automobile inventory checklist. Under the hood, the officers found jewelry wrapped in a Pink Motel towel, and in the trunk, they found a small unlocked box labeled "Oakwood Jewelry Inc., Salt Lake City." An officer opened the box and found over one thousand precious gems.

The jewelry was subsequently identified as the jewelry taken from Oakwood Jewelers.

## I.

The first issue is whether the search of defendant's automobile went beyond the legitimate scope of an inventory search. An inventory search of an automobile is a well-defined exception to the warrant requirement of the Fourth Amendment. *See South Dakota v. Opperman,* 428 U.S. 364, 367–76, 96 S.Ct. 3092, 3096–3100, 49 L.Ed. 2d 1000 (1976); *State v. Cole,* 674 P.2d 119, 126 (Utah 1983). In *Opperman,* three purposes of an inventory search were outlined: (1) to protect an owner's property while it is in the custody of police; (2) to insure against claims of lost, stolen, or vandalized property; and (3) to protect police officers from danger. *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097.

■ Johnson contends that the search of his car was not a true inventory search but was an investigatory search because the officers' detail was only a burglary detail and because they were not really concerned with Johnson's using hydraulic lifts. He relies on *United States v. Hellman,* 556 F.2d 442, 443–44 (9th Cir.1977), which held that impounding a vehicle for the purpose of a warrantless search and not for a legitimate inventory violates the Fourth Amendment.

The impoundment and subsequent inventory search of Johnson's car were conducted after Johnson and his friends were lawfully arrested for being under the influence of a controlled substance. Clearly, the officers were not required to ignore drug-related violations simply because they were on a burglary detail.

■ Johnson also contends that the inventory search was investigatory because the police made no determination whether the automobile could remain in the motel driveway or parking lot while Johnson was being booked. The argument is not persuasive. *Colorado v. Bertine,* ⸺ U.S. ⸺⸺, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), held that although the police could have offered the defendant the opportunity to make other arrangements for the safekeeping of his property, their failure to do so did not eliminate the justification for taking an inventory of the defendant's property. In *Bertine,* the defendant's van was impounded by police after the arrest. A back-up police officer inventoried the defendant's van in accordance with local police procedures. The officer found a backpack behind the front seat and, inside the pack, a nylon bag containing metal canisters. The officer opened the canisters and discovered that they contained cocaine, methaqualone tablets, cocaine paraphernalia, and $700 in cash. The officer further found $210 in a sealed envelope inside the backpack. *Id.* at 740. The Court held that even though giving the defendant an "opportunity to make alternative arrangements would undoubtedly have been possible ... 'the real question is not what could have been achieved but whether the Fourth Amendment *requires* such steps.'" *Id.* at 742 (quoting *Illinois v. Lafayette,* 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65 (1983)) (emphasis in *Lafayette*). The interest the police had in protecting themselves and the lot owners against false claims of theft was sufficient under the Fourth Amendment to justify taking an inventory of the contents of the backpack. The same justifications apply to the facts of this case.

■ Furthermore, the existence or absence of justification for the impoundment of an automobile may be determined from the surrounding circumstances. *State v. Rice,* 717 P.2d 695, 696 (Utah 1986); *State v. Hygh,* 711 P.2d 264, 268 (Utah 1985). At the time of the arrests, Johnson's car was parked in the middle of a motel parking lot, blocking traffic. The car had an out-of-town temporary sticker in lieu of license plates. Johnson did not have a driver's license, and his friends were under the influence of a controlled substance and were under arrest; neither Johnson nor his friends could properly have moved the vehicle.

■ Johnson next asserts that the police officers were unjustified in inventorying under the hood and in the locked trunk. In

*Bertine,* the Court stated that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." 107 S.Ct. at 742. In addition, the Court wrote, " 'When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between ... glove compartments, upholstered seats, trunks, and wrapped packages ... must give way to the interest in the prompt and efficient completion of the task at hand.' " *Id.* at 743 (quoting *United States v. Ross,* 456 U.S. 798, 821, 102 S.Ct. 2157, 2171, 72 L.Ed.2d 572 (1982)).

The search in this case was conducted according to an inventory checklist mandated by the Los Angeles Police Department for all impounded vehicles. The areas in the trunk and under the hood are included on an inventory check list so that valuable items that may be in the trunk or under the hood are accounted for and so that the condition of items such as the spare tire, the battery, and other equipment can be determined. There is no showing that the Los Angeles police officers acted in bad faith by conducting an inventory search as a pretense for conducting an illegal warrantless search. *See Hygh,* 711 P.2d 264. The officers were justified in searching the trunk, its contents, and under the hood and in opening the unlocked jewelry box found in the trunk and unwrapping the towel found under the hood. *Bertine,* 107 S.Ct. at 743; *Opperman,* 428 U.S. at 364, 96 S.Ct. at 3092; *State v. Earl,* 716 P.2d 803 (Utah 1986).

■ Finally, Johnson contends that since the police did not know the jewelry was connected with a robbery in Salt Lake City, the seizure of the jewelry and the subsequent investigation to determine whether it was stolen were unlawful. The point is without merit. The large amount of jewelry, some located under the hood wrapped in a towel, some found in a box labeled "Oakwood Jewelers, Inc., Salt Lake City," and some found in Room 10 of the Pink Motel, was sufficient to give rise to a strong belief that the jewels were stolen. Since the jewels were in the lawful custody of the police, no warrant was necessary.

## II.

■ Johnson next claims that there was insufficient evidence to convict him of an aggravated assault on the customer who was in Oakwood Jewelers during the robbery. He does not challenge, however, his conviction for aggravated robbery of the jewelry store. His contention is only that it was one of the other participants in the robbery who committed the aggravated assault. He argues that despite his conviction of aggravated robbery, he did not have the specific intent to commit an aggravated assault and, therefore, this conviction was in error.

Even assuming that there is no evidence that Johnson personally committed the aggravated assault, Johnson's argument is untenable. Utah Code Ann. § 76–2–202 (1978) provides as follows:

> Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct.

Since Johnson essentially concedes that he had the intent to participate with the others in the aggravated robbery, and since there is sufficient evidence that Johnson was one of the two men in the jewelry store at the time of the robbery, Johnson was responsible for the aggravated assault, either as a principal or an aider and abetter under § 76–2–202. The evidence shows that both men participated in forcing the customer to the back bathroom and that one of the men used a gun. Under these facts, the man who did not use a gun nonetheless encouraged and aided the other to commit the aggravated assault.

## III.

■ The third issue is whether a jury instruction regarding the possession of stolen property unconstitutionally shifted the burden of proof to Johnson. *See State v.*

*Tarafa,* 720 P.2d 1368 (Utah 1986); *State v. Pacheco,* 712 P.2d 192 (Utah 1985); *State v. Chambers,* 709 P.2d 321 (Utah 1985). Section 76–6–402(1) (1978) states: "Possession of property recently stolen, when no satisfactory explanation of such possession is made, shall be deemed prima facie evidence that the person in possession stole the property." If the trial court had instructed in the language of the statute, it would have erred. *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *State v. Chambers, supra.* But the court did not so instruct. Rather, the trial court instructed the jury as follows: "Under the law of the State of Utah, possession of property recently stolen, when a person in possession fails to make a satisfactory explanation of such possession, is a fact from which you may infer that the person in possession stole such property." This instruction was not defective. *State v. Smith,* 726 P.2d 1232 (Utah 1986).

■ Johnson also contends that the instruction failed to correctly state the presumption articulated in § 76–6–402(1) and that the use of the word "fails" instead of the statutory language "no" misdirected the jury. The argument is frivolous, as is the contention that the term "may infer" is stronger than the statutory language of a presumption which would be "deemed prima facie."

## IV.

■ Finally, Johnson contends that his conviction for theft should be reversed because, under the facts of this case, theft was a lesser included offense of the aggravated robbery charge. On this point, defendant is correct. *State v. Hill,* 674 P.2d 96 (Utah 1983), squarely holds that to be the law.

The convictions are affirmed except for the theft conviction, which is reversed.

HALL, C.J., and HOWE, J., concur.

ZIMMERMAN, Justice (concurring):

I join the majority in concluding that under relevant United States Supreme Court decisions, the inventory search conducted here was permissible.

However, I would specifically note that the defendant has not challenged this search under article I, section 14 of the Utah Constitution. As I noted in my separate opinion in *State v. Hygh,* 711 P.2d 264, 271–72 (Utah 1985) (Zimmerman, J., concurring), much of the existing federal fourth amendment warrantless search and seizure law is rather Kafkaesque, consisting as it does of

> rules built upon a series of contradictory and confusing rationalizations and distinctions. Police officers and judges attempting to make their way through this labyrinth often imperil both the rights of individuals and the integrity and effectiveness of law enforcement.

*Id.* at 272. Nothing has occurred within the almost two years since *Hygh* to dissuade me from this view. And I include within the sweep of this condemnation the rules governing warrantless automobile searches, such as occurred in the present case. The notion that anything on wheels can be searched by an officer who, after the fact, can offer some reasonable justification for having done so

> essentially guts the fourth amendment's warrant requirement as it pertains to automobile searches. There is little reason to believe that effective law enforcement requires this sacrifice of the interests protected by the warrant requirement.

*Id.* 272 n. 1 (citations omitted). Were this case argued on state constitutional grounds, I might well find the search unlawful.

I join the majority in rejecting the remainder of the defendant's contentions. The conviction is appropriately affirmed.

DURHAM, J., concurs in the concurring opinion of Justice ZIMMERMAN.