**STATE of Utah, Plaintiff and Respondent,**

v.

**Donald Carlton SHAMBLIN, Defendant and Appellant.**

No. 870406–CA.

Court of Appeals of Utah.

Oct. 24, 1988.

G. Michael Westfall (argued), Gallian & Westfall, St. George, for defendant and appellant.

W. Brent Langston (argued), Deputy Washington Co. Atty., St. George, for plaintiff and respondent.

Before DAVIDSON, GARFF and ORME, JJ.

## OPINION

ORME, Judge:

Defendant was convicted by a jury of driving under the influence of alcohol and possession of a controlled substance. On appeal, defendant claims contraband admitted into evidence at his trial was obtained in violation of the Fourth Amendment and he seeks reversal of his convictions. We affirm his conviction for driving under the influence of alcohol but reverse the conviction for possession of a controlled substance.

## FACTS

On April 15, 1987, Trooper James D. Lloyd of the Utah Highway Patrol stopped a North American Van Lines truck and trailer unit which had failed to stop at a port of entry on Interstate 15. Defendant was driving the truck. Trooper Lloyd instructed him to exit the freeway at the next opportunity and return to the port of entry. After defendant failed to exit the freeway as instructed, Trooper Lloyd again stopped the truck and, upon smelling alcohol on defendant's breath, administered field sobriety tests. After defendant failed the field sobriety tests, he was arrested for driving under the influence of alcohol and taken to jail. Defendant then submitted to an intoxilyzer test which indicated a blood alcohol level of .18 percent.

After impounding the truck and trailer pursuant to Utah Code Ann. § 41–6–44.30 (1988), Trooper Lloyd set about to conduct an "inventory search" as required by a Utah Highway Patrol order.[1] Trooper

---

1. General Order No. 83–10, as revised January 1986, details the procedures to be followed by Highway Patrol officers when impounding ve-

hicles. Although it runs over seven pages, only one paragraph concerns the inventory search:

> When a vehicle is taken to any police parking lot, impound lot or to any commercial storage

Lloyd itemized the personal items he found during his search of the truck on a standard Utah Highway Patrol Vehicle Inventory form.

While searching the truck's sleeper compartment, Trooper Lloyd found a small red "shaving kit type" bag. The bag was zipped shut. Trooper Lloyd unzipped the bag and found a marijuana pipe, a "bong," and a small quantity of marijuana, all of which he noted on the inventory form along with numerous other personal effects found in the truck's sleeper. Defendant was then charged with possession of a controlled substance.

Defendant's motion to suppress the contraband found inside the red bag was denied by the trial court. The contraband was admitted into evidence at trial over defendant's objection. The intoxilyzer test results were also received into evidence. The jury found defendant guilty of driving under the influence of alcohol and possession of marijuana.

Defendant seeks reversal of his convictions. His principal argument is that the trial court erred in failing to suppress the contraband.[2] Defendant claims the inventory search conducted by Trooper Lloyd violated his Fourth Amendment rights under the United States Constitution due to the lack of standardized procedures requiring the opening of closed containers.

## INVENTORY SEARCHES

■ "An inventory search of an automobile is a well-defined exception to the warrant requirement of the Fourth Amendment." *State v. Johnson*, 745 P.2d 452, 454 (Utah 1987). *Accord, South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Hygh*, 711 P.2d 264, 267 (Utah 1985). Inventory searches are deemed necessary to: (1) protect individual property in police custody; (2) protect police against claims of loss or theft of property; and (3) detect dangerous conditions or instrumentalities within impounded vehicles. *Johnson*, 745 P.2d at 454. Accordingly, the Fourth Amendment is not violated if the police conduct an inventory search of a properly impounded vehicle[3] in good faith following reasonable, standardized procedures. *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987).

■ It is clear that inspection of the zipped bag in this case and careful inventory of its contents are entirely consistent with one of the policy objectives set forth in *Johnson*, namely to protect police against claims of loss or theft. Such a bag

lot, a written inventory shall be made of the contents of the vehicle. Such record shall become a part of the case file. When custody of the vehicle changes from one person to another, the person taking custody of the vehicle shall assume custody of the contents by placing his signature on the inventory list.

2. Defendant also argues that: (1) Article I, section 14, of the Utah Constitution requires that drivers be given the opportunity to secure the contents of their vehicle before an inventory search is conducted; (2) defendant's post-arrest statement that he had consumed six cans of beer should not have been admitted into evidence; (3) testimony by a police officer as to the smell of burnt marijuana lacked foundation; and (4) the trial court's jury instruction defining "reasonable doubt" misstated the burden of proof. We find no merit in these arguments.

However, we do note that defendant urges us to evaluate the inventory search under article I, section 14, of the Utah Constitution. Defendant has raised this issue at trial and it has been briefed for this appeal—not just by reference to the state constitution, as we often see, but with actual analysis of the state constitutional provision. Members of the Supreme Court have sug-

gested the need for such an approach by counsel. *See, e.g., State v. Watts*, 750 P.2d 1219, 1221 n. 8 (Utah 1988); *State v. Johnson*, 745 P.2d 452, 456 (Utah 1987) (Zimmerman, J., concurring); *State v. Hygh*, 711 P.2d 264, 271–72 (Utah 1985) (Zimmerman, J., concurring). Absent such an approach, that Court has had no occasion to establish state constitutional standards for inventory searches. *See, e.g., State v. Constantino*, 732 P.2d 125, 126 (Utah 1987) (inventory search issue under the Utah Constitution not reached due to defendant's failure to raise issue at trial); *State v. Rice*, 717 P.2d 695, 697 (Utah 1986) (court refused to address separate state constitutional standard because neither party briefed the issue). We need not accept defendant's invitation to address his rights under our state constitution as we hold that the federal Fourth Amendment requires suppression of the evidence in question.

3. *See State v. Hygh*, 711 P.2d at 268. Defendant has not argued that the impoundment of his truck was improper and we therefore need not consider that issue.

might contain money, a watch, jewelry or other small valuables. Since it was not locked and could be easily opened, false claims of theft of the bag's contents while in police custody are a legitimate concern. Nonetheless, defendant contends that Trooper Lloyd's opening of the zipped red bag during the inventory search was constitutionally defective due to the absence of standardized procedures mandating the opening of closed containers.

It is undisputed that no such procedures governed Trooper Lloyd in this case. Trooper Lloyd gave the following testimony at the suppression hearing:

> Q (defense counsel). Are there any particular guidelines with reference to whether items—whether locked or zippered containers should be opened or inventoried as a container? Are there any departmental policy guidelines as to that issue?
>
> A (Trooper Lloyd). Not that I can recall. It's all based on how well we can secure the items.
>
> Q. So it's pretty much up to you—your decision as to how you conduct the inventory and open locked or zippered containers, isn't that true?
>
> A. Pretty much so, yes.

The Highway Patrol order on inventory searches is silent on whether closed containers should be opened, see Note 1, supra, and the Highway Patrol inventory form does not address that question.

### CLOSED CONTAINERS

This case is governed by the United States Supreme Court's recent decision in *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), in which the Court granted certiorari to consider the constitutionality of police officers opening closed containers during inventory searches, an issue that had generated inconsistent results in other courts.[4]

The defendant in *Bertine* was arrested for driving while intoxicated. The van he was driving was impounded by police and its contents inventoried. Cocaine was discovered after officers opened a closed backpack found in the van, and the prosecution sought to introduce it into evidence at defendant's trial. The trial court noted the inventory search of defendant's van was performed in a "somewhat slipshod" manner but that "the standard procedures for impounding vehicles mandated a 'detailed inventory involving the opening of containers and the listing of [their] contents.'"[5] 107 S.Ct. at 740. The trial court nonetheless suppressed the evidence based on the Colorado Constitution. The Colorado Supreme Court affirmed the trial court, but based its decision on the United States Constitution. *Id.*

The Supreme Court reversed the Colorado Supreme Court, holding that the Fourth Amendment was not violated and the cocaine should not have been suppressed. 107 S.Ct. at 743. However, the Court stated:

> We emphasize that, in this case, the trial court found that the police department's procedures mandated the opening of closed containers and the listing of their contents. Our decisions have always adhered to the requirement that inventories be conducted according to standardized criteria.

107 S.Ct. at 742 n. 6.

We read *Bertine* to establish that the Fourth Amendment *is* violated if closed containers are opened during a vehicle inventory search in the absence of a standardized, specific procedure mandating

---

**4.** *Compare State v. Muralt*, 376 N.W.2d 25, 26–27 (N.D.1985), *cert. denied*, 479 U.S. 1063, 107 S.Ct. 947, 93 L.Ed.2d 997 (1987) (routine opening of closed containers permissible during inventory search) *and Schwasta v. United States*, 392 A.2d 1071, 1075 (D.C.Cir.1978) (police regulations establishing vehicle inventory procedures apply to inventory search of motorcycle saddlebags as the equivalent of an automobile passenger compartment) *with State v. Bramlett*, 94 N.M. 263, 609 P.2d 345 (Ct.App.1980) (lack of standard police procedure for opening closed containers makes inventory search unreasonable; even if such standards did exist, opening closed containers would probably violate the Fourth Amendment).

**5.** The *Bertine* opinion does not identify the precise source or provide the language of this police procedure. However, the trial court's finding that the procedure mandated the opening of closed containers was *not disturbed by either* the Colorado Supreme Court or the United States Supreme Court.

their opening.[6] Such a procedure precludes the possibility that officers conducting inventory searches will act arbitrarily and only selectively open containers. Further, such a procedure insulates police from the claim that, in a particular case, their opening closed containers was nothing more than a "fishing expedition." It also promotes a certain equality of treatment. With a standardized, mandatory procedure, the minister's picnic basket and grandma's knitting bag are opened and inventoried right along with the biker's tool box and the gypsy's satchel.

Applying *Bertine* to the present case, it is clear that the search of defendant's shaving bag was unconstitutional and the contraband must be suppressed.[7] Trooper Lloyd discovered the contraband inside a closed container he opened during a warrantless inventory search. Unlike in *Bertine*, Trooper Lloyd was not acting pursuant to a specific procedure mandating the opening of closed containers. In fact, no such departmental procedure existed. Accordingly, the contraband was obtained in violation of defendant's Fourth Amendment rights.

We reverse defendant's conviction for possession of a controlled substance and remand to the trial court for such further proceedings as might be appropriate on that charge, but affirm his conviction for driving under the influence of alcohol.

GARFF, and DAVIDSON, JJ., concur.

---

**6.** The same result is reached through different analysis. Justice Blackmun, with whom Justice Powell and Justice O'Connor joined, wrote separately in *Bertine* concurring in the Court's disposition. Justice Blackmun emphasized:

> [I]t is permissible for police officers to open closed containers in an inventory search only if they are following standard police procedures that mandate the opening of such containers in every impounded vehicle.

*Bertine,* 107 S.Ct. at 744 (Blackmun, J., concurring). Thus, the explicit position adopted by three Justices in their concurrence suggests that since "[t]he two [*Bertine*] dissenters surely would settle for nothing less, ... it may be concluded that a *total* absence of police discretion ... [in opening closed containers] is mandated as a Fourth Amendment matter...." 3 W. LaFave, Search and Seizure, § 7.4 at 8 (2d ed., 1988 Supp.) (emphasis in original).

**7.** The state cites *State v. Johnson,* 745 P.2d 452 (Utah 1987), in support of its contention that the inventory search in this case was not constitutionally defective. Reliance on *Johnson* is misplaced. The Court in *Johnson* did not have before it the precise issue raised in this case.