STATE of Utah, Plaintiff and Appellee,

v.

Michael Allen STERGER, Defendant and Appellant.

No. 900078–CA.

Court of Appeals of Utah.

March 6, 1991.

Phillip L. Foremaster, St. George, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., and Dan R. Larsen, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

## OPINION

Before BENCH, JACKSON and RUSSON, JJ.

JACKSON, Judge:

This is an interlocutory appeal from the trial court's denial of two motions to suppress evidence consisting of controlled substances, drug paraphernalia and a sample of defendant's blood which was obtained following an automobile accident.

Defendant seeks review of the following issues: (1) whether the inventory search of his automobile was authorized and legal under the existing circumstances; (2) and whether the sample of his blood was legal-ly taken. We affirm as to the evidence obtained during the inventory search and remand as to the blood sample.

## FACTS

On July 23, 1989, the vehicle in which defendant, his wife and two passengers were riding, left the road and collided with an embankment. The accident took place in a remote area of eastern Garfield County, Utah. Defendant left the vehicle and went for help. A helicopter transported defendant's wife and the two passengers to a hospital in Page, Arizona. Prior to leaving the accident site, one of the passengers accused defendant of being drunk and causing the accident. The other passenger died en route to the hospital. Defendant, who appeared to be the least injured was transported to the Bullfrog Clinic, a nearby medical facility.

Deputy Shawn Draper of Garfield County arrived shortly after the accident. After the passengers had been transported for medical attention, a tow truck arrived to remove the inoperative vehicle from the road. Because the vehicle was locked, Draper used a "slim jim" to force open one of the doors. Draper then inventoried the contents of the vehicle. During the inventory, Draper opened a camera case and found a film canister, which he also opened. He then seized a green leafy substance found inside the canister, believing it to be marijuana. After discontinuing the inventory, Draper had the vehicle towed to his home in Ticaboo, Utah, where he planned to continue the inventory. After the tow truck left the scene, Draper drove to the Bullfrog Clinic, where defendant had been transported, and called the Sheriff's office to determine how to proceed. Draper was instructed to have blood drawn from defendant.

Draper told defendant he was required to submit to a blood test since he had been involved in an accident. Defendant was not told he could refuse, and he was not under arrest at this time. William Patrick Quinn, a certified park medic, summoned Peter Hollis, a physicians assistant employed by the Bullfrog Clinic, to take the

blood. Hollis explained to defendant that Draper wanted the blood taken, and proceeded to take the blood. After several unsuccessful attempts by Hollis, Quinn located a vein and started the catheterization. After defendant's blood was taken, Draper transported him to Koosharem, Utah, and placed him in the custody of another deputy. The test revealed that defendant's blood alcohol level was within the legal limit, but traces of THC, a marijuana by-product were present.

The day following the accident, defendant's vehicle was towed from Draper's home to a state certified impound yard. Draper completed his inventory of the items in the vehicle two days after the accident. Draper testified that he opened all closed containers, except canned goods. In a Tupperware container, Draper found marijuana and drug paraphernalia. He seized these items. All of the items found in the vehicle were eventually listed on an inventory sheet by Draper.

At his pretrial hearing, defendant moved to suppress the contents of the film canister, the contents of the Tupperware container, and the results of the blood test. Defendant alleged that these items were illegally seized. The trial court denied his motions and this appeal followed.

■ At the outset, this court must determine if defendant waived his state constitutional claims. The State asserts that the lower court had no such arguments before it and therefore the issue was decided only under the United States Constitution. We agree. This court has often urged counsel, most recently in *State v. Bobo*, 803 P.2d 1268, 1272–73 (Utah Ct.App.1990), to include more than a "nominal allusion" to state constitutional rights in appellate briefs and arguments. In the present case, defendant failed to brief or argue state constitutional guarantees at either the pretrial hearing or on appeal. Accordingly, we decline to consider his arguments based on the Utah Constitution.

## STANDARD OF REVIEW

■ Findings of fact supporting a trial court's decision on a motion to suppress are reviewed under the "clearly erroneous" standard of Utah R.Civ.P. 52(a). *State v. Hargraves*, 806 P.2d 228, 231 (Utah Ct.App. 1991) (citing *State v. Palmer*, 803 P.2d 1249 (Utah Ct.App.1990).

## INVENTORY SEARCH

■ Deputy Draper testified that he took custody of defendant's car, inventoried its contents, and had the car removed from the scene of the accident. Defendant first argues Draper did not have to impound the car but could have left it locked and where it was. This assertion is without merit. Defendant's car was partially blocking the road in a remote area where the accident occurred. The front windshield was shattered and the car inoperable. All of the occupants had been taken for medical attention and Draper had no opportunity to ask defendant what he wanted done with the car.[1] "[T]he existence or absence of justification for the impoundment of an automobile may be determined from the surrounding circumstances." *State v. Johnson*, 745 P.2d 452, 454 (Utah 1987) (citations omitted). Given the condition of defendant's car and where it was located after the accident, there was justification for taking the car into police custody.

■ Before defendant's car was towed from the accident scene, Draper inventoried its contents. Inventory searches conducted under these circumstances are justified, *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706 (1973), and it is well settled that such a search is an exception to the warrant requirement of the fourth amendment. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Earl*, 716 P.2d 803, 805 (Utah

---

**1.** In any case, failure to offer defendant an opportunity to make arrangements for his car does not eliminate the justification for conducting an inventory of that property, *Colorado v.*

*Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), or render the inventory illegal. *State v. Hygh,* 711 P.2d 264 (Utah 1985).

1986); *State v. Shamblin,* 763 P.2d 425, 426 (Utah Ct.App.1988). Inventory procedures meet three distinct needs: (1) to protect individual property in police custody; (2) protect police against claims of loss or theft of property; and (3) detect dangerous conditions of instrumentality within impounded vehicles. *Johnson,* 745 P.2d at 454 (citing *Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097). Having determined that Draper was authorized to take custody of defendant's vehicle, a concomitant right existed to examine and inventory its contents. *See State v. Criscola,* 21 Utah 2d 272, 444 P.2d 517 (1968).

Our analysis does not stop at determining that the impoundment and inventory search of defendant's car were justified. We must also determine if the search was conducted for inventory purposes, in a legal manner, and not merely as a "fishing expedition for evidence." Defendant alleges that, even if an inventory search was authorized, it was illegal because it was not carried out pursuant to standardized procedures.[2]

### Bifurcated Inventory Searches

■ The Garfield County Sheriff's Department has written procedures governing when the contents of a vehicle shall be inventoried, and how that inventory shall be carried out:

4.05 Vehicle Inventories

(1) Any vehicle impounded shall be inventoried. A written inventory shall be made of all contents of vehicle, both in opened, closed and/or locked containers. The trunk and also any compartments shall be opened and the contents inventoried. All evidence seized in any invento-

ry shall be placed in the evidence locker. Such record shall become a part of the case file. When custody of the vehicle changes from one person to another, the person taking custody of the vehicle shall also assume custody of the contents by placing his/her signature on the inventory list.

These procedures are silent as to how soon after a vehicle is impounded the inventory must be completed, and whether bifurcated searches are permitted.

The fourth amendment requires a sufficient proximity in time between the impoundment of a vehicle and the subsequent inventory search. *Ex Parte Boyd,* 542 So.2d 1276, 1279, *cert. denied,* — U.S. ——, 110 S.Ct. 219, 107 L.Ed.2d 172 (1989). Each moment, hour or day that passes detracts from a full effectuation of the objectives of the inventory, namely to protect property. *Id.*[3]

In the present case, there was a time lapse of at least one day between the impounding of defendant's vehicle and the time the inventory was completed. However, the inventory was initiated immediately after the accident. It was completed at a later time because, as Draper testified, the remoteness of the area required him to prioritize his duties, and that meant removing victims for medical care, getting defendant's blood drawn, arresting and transporting defendant, and completing the preliminary investigation of the accident.

■ We agree with defendant that a bifurcated inventory search, such as was conducted here, is not specifically provided for in the applicable procedures. That fact alone, however, does not make the inventory search illegal. Where there is an initial

---

**2.** Defendant states the following specific grounds of error: (1) the inventory procedures did not provide for bifurcated searches, (2) the procedure for opening closed containers was not followed, (3) the inventory sheet was not signed by the tow truck driver when he assumed custody of the vehicle, and (4) the procedures do not outline when the police are to impound a vehicle. Because defendant fails to cite support or provide any meaningful analysis as to arguments three and four, we decline to rule on them. *See State v. Amicone,* 689 P.2d 1341, 1344 (Utah 1984).

**3.** Searches with a time lapse between impoundment and the inventory have been upheld under certain circumstances. *See, e.g., Rudd v. State,* 649 P.2d 791 (Okla.Crim.App.1982) (eight-hour lapse due to officer in charge of inventory being detained by complexity of accident in which subject vehicle was involved); *Black v. State,* 418 So.2d 819 (Miss.1982) (officers had to spend time on emergency detail).

search performed contemporaneously with the impounding of a vehicle, and a second search conducted after the vehicle has been impounded, both parts of the search are legally justified. *Cf. Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (upholding a second search conducted after vehicle was impounded); *Michigan v. Thomas*, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (upheld warrantless search even though prior inventory search had already been made); *State v. Earl*, 716 P.2d 803, 805 (Utah 1986) (warrantless search after automobile impounded upheld).

## Closed Containers

■ Defendant also alleges that, contrary to the inventory search guidelines, Draper did not open all closed containers found in the vehicle. The Garfield County Sheriff's guidelines specifically state that "A written inventory shall be made of all contents of vehicle, both in opened, closed and/or locked containers." As to the opening and inventorying of closed containers, the United States Supreme Court has stated that standardized criteria, *Colorado v. Bertine*, 479 U.S. 367, 375, 107 S.Ct. 738, 743, 93 L.Ed.2d 739 (1987), or established routine, *Illinois v. Lafayette*, 462 U.S. 640, 648, 103 S.Ct. 2605, 2610–11, 77 L.Ed.2d 65 (1983), regulate the opening of containers found during an inventory search. *See also Florida v. Wells*, —— U.S. ——, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990) (absent specific policies, search *not* sufficiently regulated to satisfy fourth amendment); *Shamblin*, 763 P.2d at 427–28 (state trooper's opening of a zipped bag during a warrantless inventory search was defective in absence of standardized police procedures mandating the opening of closed containers during such a search).

We are not persuaded by defendant's argument. In *Shamblin* this court interpreted recent cases to establish "that the Fourth Amendment is violated when closed containers are opened during a vehicle inventory search *in the absence of a standardized, specific procedure mandating their opening.*" *Shamblin*, 763 P.2d at 427–28. (Emphasis added). "With a standardized, mandatory procedure, the minister's picnic basket and grandma's knitting bag are opened and inventoried right along with the biker's tool box and the gypsy's satchel." *Id.* at 428. Draper testified that he opened all closed containers except sealed cans of food found in defendant's vehicle. He did not arbitrarily or selectively open containers, as defendant would have us believe. Accordingly, defendant's reliance on *Shamblin* is misplaced.[4] In this case, not only did standardized procedures exist, but they were followed as well.

## Conclusion as to Inventory Search

None of the arguments put forth by defendant as to the inventory search, persuade us that the evidence obtained during that search should have been suppressed. Accordingly, we affirm the trial court's denial of defendant's motion to suppress the evidence found in his vehicle.

## BLOOD SAMPLE

■ Defendant next claims that the sample of his blood should be suppressed because it was drawn without his consent, and because the persons who drew the blood were not authorized to do so. We deferentially review the trial court's determination that defendant consented to the blood test, as is appropriate with all factual determinations. *State v. Webb*, 790 P.2d 65, 82 (Utah Ct.App.1990).[5]

---

4. At any rate, a strict interpretation of the *Shamblin* language was tempered by the United States Supreme Court in *Florida v. Wells*, —— U.S. ——, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990): "A police officer may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and the characteristics of the container itself. The allowance of the exercise of judgment based on concerns related to

the purposes of an inventory search does not violate the Fourth Amendment." *Id.* 110 S.Ct. at 1635.

5. We note that there is no bright-line test used when a reviewing court examines whether consent to a search was properly obtained. Rather, "the question of whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a

Defendant contends that at no time did he voluntarily consent to the blood test. He claims he acquiesced because Draper told him he was required to submit to a blood test. The State acknowledges defendant was told that blood was required to be drawn because there had been an accident, and they do not dispute the inaccuracy of the statement. Nonetheless, they contend, and the trial court found, that defendant consented to the test twice: once after he was told by Draper that a sample was required, and again when the medical personnel present asked him to proceed with the sampling.

The trial court found defendant consented simply because there was no dispute in the record that defendant submitted to the test. However, a determination of voluntary consent cannot rest on such a cursory observation. In sustaining its burden that voluntary consent was given the State must meet its burden of proof:

(1) There must be clear and positive testimony that the consent was "unequivocal and specific" and "freely and intelligently given";

(2) the government must prove consent was given without duress or coercion, express or implied; and

(3) the courts indulge every reasonable presumption against the waiver of fundamental constitutional rights and there must be convincing evidence that such rights were waived.

*State v. Webb,* 790 P.2d 65, 82 (Utah Ct. App.1990) (quoting *United States v. Abbott,* 546 F.2d 883, 885 (10th Cir.1977)) (citations omitted).

Our examination of the record reveals that the trial court failed to make adequate findings of fact concerning the issue of voluntary consent. The trial court did not make any findings as to the factors outlined above. The record is devoid, for example, of any discussion regarding whether defendant knew that he could refuse the test. Second, Draper told defendant such a test was required. Because factual issues are best addressed at the trial level, *State v. Hargraves,* 806 P.2d 228, 231 (Utah Ct. App.1991), we remand for a rehearing on this critical issue.

■■■ In an alternative argument, defendant contends that the blood test result should have been suppressed because the blood sample was taken by persons not authorized to draw blood pursuant to Utah Code Ann. § 41–6–44.10 (Supp.1990), the implied consent statute. The State responded to this argument in their brief, stating it was unnecessary to determine if Hollis and Quinn were authorized to draw blood, because defendant voluntarily consented to the blood test, making the implied consent statute inapplicable. We agree that § 41–6–44.10 is inapplicable to the facts at hand, but we find it inapplicable for the reason that defendant was not placed under arrest prior to his blood being drawn.[6] Because the implied consent stat-

---

question of fact to be determined from the totality of all the circumstances." *State v. Marshall,* 791 P.2d 880, 887 (Utah Ct.App.1990) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 227, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973)). *See also State v. Arroyo,* 796 P.2d 684, 687 (Utah 1990) ("trial court's finding of consent was clearly erroneous."); *State v. Whittenback,* 621 P.2d 103, 106 (Utah 1980); *State v. Robinson,* 797 P.2d 431 (Utah Ct.App.1990); *Webb,* 790 P.2d at 82. Federal cases addressing voluntariness of consent to a search have also traditionally spoken in terms of voluntary consent as a fact question. *See, e.g., Thompson v. Louisiana,* 469 U.S. 17, 23, 105 S.Ct. 409, 412, 83 L.Ed.2d 246 (1984) (issue of consent a factual issue); *United States v. Mendenhall,* 446 U.S. 544, 557, 100 S.Ct. 1870, 1878–79, 64 L.Ed.2d 497 (1980) (voluntariness of consent is a question of fact); *United States v. Carson,* 793 F.2d 1141, 1153 (10th Cir.1986) (defendant's consent a factual

finding); *United States v. Oyekan,* 786 F.2d 832, 839 (8th Cir.1986) (consent reviewed under a "clearly erroneous" standard); *United States v. Espinosa,* 782 F.2d 888, 892 (10th Cir.1986) (voluntariness of consent a finding of fact); *United States v. Cox,* 752 F.2d 741, 747 (1st Cir.1985) (question of consent is one of fact, not of law); *United States v. Lopez,* 777 F.2d 543 (10th Cir. 1985) (trial court's finding of fact on issue of voluntariness for consent cases must be accepted on appeal unless clearly erroneous); *United States v. Cooper,* 733 F.2d 1360, 1364 (10th Cir. 1984) (standard of review for denial of motion to suppress is the clearly erroneous standard).

6. Utah Code Ann. § 41–6–44.10(1)(a) (Supp. 1990) provides that a person operating a motor vehicle is considered to have consented to a chemical test or tests of his breath, blood, or urine. This statute is applicable only to persons

ute is not applicable in this case, defendant's claim fails.[7]

## CONCLUSION

We affirm the trial court's denial of defendant's motion to suppress the evidence found as a result of the inventory search of defendant's vehicle. As to the motion to suppress the results of the blood test, we remand for an examination of the voluntariness of defendant's consent.

BENCH and RUSSON, JJ., concur.

who have been placed under arrest. *State v. Cruz,* 21 Utah 2d 406, 446 P.2d 307 (1968) (implied consent statute only applicable to persons who have been placed under arrest); *In the Interest of R.L.I.,* 771 P.2d 1068 (Utah 1989) (blood sample taken from motorist who was not under arrest, who was not informed he could refuse to submit to the test, and who did not consent thereto, was taken contrary to provisions of implied consent statute and results therefore inadmissible); *State v. Wight,* 765 P.2d 12 (Utah Ct.App.1988) (chemical test cannot be taken without driver's consent prior to arrest unless driver is *unconscious* or otherwise not able to give consent).

7. Our counterpart in Oregon has addressed this issue on similar facts, and held that defects in administering such a test go to the weight to be given its results by the trier of fact, but *do not make the results inadmissible. Gildroy v. Motor Vehicles Division,* 100 Or.App. 538, 786 P.2d 757, 758 (1990) (emphasis added).