STATE of Utah, Plaintiff and Appellee,

v.

Paula Lynn KAVMARK, Defendant
and Appellant.

STATE of Utah, Plaintiff and Appellee,

v.

Staffan Borge KAVMARK, Defendant
and Appellant.

Nos. 910267–CA, 910268–CA.

Court of Appeals of Utah.

Sept. 16, 1992.

Manny Garcia, Salt Lake City, for defendant and appellant Paula Lynn Kavmark.

Curtis C. Nesset, Salt Lake City, for defendant and appellant Staffan Borge Kavmark.

R. Paul Van Dam and Kenneth A. Bronston, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, Associate P.J., and JACKSON and RUSSON, JJ.

BILLINGS, Associate Presiding Judge:

Defendants Staffan Borge Kavmark (Mr. Kavmark) and Paula Lynn Kavmark (Mrs. Kavmark) appeal their jury convictions of unlawful use of a financial transaction card, a third-degree felony, in violation of Utah Code Ann. § 76–6–506.2(3) (Supp. 1992). Because each appeal involves the same factual background and substantially similar legal issues, we have consolidated the cases on appeal.

## FACTS

In April 1989, while living in Oregon, Mr. and Mrs. Kavmark jointly applied for two MasterCard credit cards from USAA Federal Savings Bank (USAA) with a total credit limit of $5,000.00. During the summer of 1989, the Kavmarks moved to Utah.

Upon receipt of the credit cards, the Kavmarks began using them frequently and exceeded their credit limit by June 1989. In June, the Kavmarks paid USAA $315.00, the only payment they made on their account.

MasterCard allows merchants to accept charges from card holders of up to $75.00 without receiving approval. The Kavmarks became aware of this $75.00 limit because merchants permitted them to make purchases under $75.00 when the Kavmarks knew they had exceeded their credit line. During September and October, the Kavmarks made almost every charge on the cards at a retail store for an amount less than $75.00. They also made multiple purchases under $75.00 at the same store on the same day. The MasterCard statement dated October 4, 1989 indicated the Kavmarks made over 300 charges in September alone, accruing a balance of $20,-983.69. During the first two weeks of October, the Kavmarks made an additional 200 charges. Mr. and Mrs. Kavmark both testified at trial they intentionally kept their individual purchases under $75.00 so the transactions "would go through."

By the time USAA cancelled the cards in October 1989, the Kavmarks had accrued an outstanding balance of $30,470.81. Shortly after USAA revoked the credit cards, the Kavmarks filed for bankruptcy. The Kavmarks' debt to USAA was not discharged and became the subject of a separate repayment agreement between the Kavmarks and the credit card company.

Mr. and Mrs. Kavmark were each charged with one count of unlawful use of a financial transaction card, in violation of section 76–6–506.2(3). Two attorneys from the Salt Lake Legal Defenders' Association were appointed to represent the Kavmarks. Counsel for Mr. and Mrs. Kavmark in-

formed the trial court they were employed by the same office and had discussed this fact with their clients. Counsel told the court they saw no actual conflict of interest but had discussed the possibility of a potential conflict with their clients, and their clients had chosen to retain them and to waive any potential conflict. The court confirmed the waiver with the Kavmarks.

During voir dire, counsel for both Mr. and Mrs. Kavmark challenged venire members Donald Baumann and Dale Morrison for cause. Counsel for Mrs. Kavmark also. challenged venire member Carolee Cluny for cause. The trial court declined to excuse these venire members. Counsel for Mr. Kavmark used a peremptory challenge to remove Mr. Baumann from the venire. Counsel for Mrs. Kavmark used peremptory challenges to remove Mr. Morrison and Ms. Cluny.

The Kavmarks were tried together before a jury and convicted as charged. The trial court subsequently granted both defendants' motions to reduce the convictions to class A misdemeanors.

On appeal, Mr. and Mrs. Kavmark both contend: (1) They were denied effective assistance of counsel due to a conflict of interest between and deficient trial performance by their attorneys, (2) the court committed reversible error by failing to remove jurors who were challenged for cause, (3) section 76–6–506.2(3) is unconstitutional because it violates their rights to equal protection under the state and federal constitutions, and (4) there was insufficient evidence to prove the element of "intent to defraud." Additionally, Mrs. Kavmark claims the trial court failed to properly instruct the jury regarding the element of intent. Because we conclude the trial court erred by failing to remove the challenged jurors and, therefore, reverse and remand for a new trial, we do not reach the other issues Mr. and Mrs. Kavmark raise on appeal.

## FAILURE TO REMOVE JURORS FOR CAUSE

### Legal Authority

We begin our analysis by reviewing Utah law on the removal of jurors for cause. In

light of this authority, we then examine the trial court's failure to remove the challenged jurors.

"A motion to dismiss a prospective juror for cause is within the sound discretion of the trial court. When reviewing such a ruling, we reverse only if the trial court has abused its discretion." *State v. Woolley*, 810 P.2d 440, 442 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991); *accord State v. Cox*, 826 P.2d 656, 659 (Utah App. 1992). However, it is reversible error to require counsel to use a peremptory challenge "to remove a prospective juror who should have been dismissed for cause after he or she expressed bias or an inability to be impartial." *State v. Wilson*, 771 P.2d 1077, 1083 (Utah App.1989); *accord State v. Bishop*, 753 P.2d 439, 451 (Utah 1988).

Rule 18 of the Utah Rules of Criminal Procedure provides for a challenge for cause of a prospective jury member when:

[A] state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals or common notoriety, if it satisfactorily appears to the court that the juror can and will, notwithstanding such opinion, act impartially and fairly upon the matter to be submitted to him.

Utah R.Crim.P. 18(e)(14).

In applying Rule 18, Utah's appellate courts have required that if a juror makes a statement facially demonstrating bias or prejudice, either counsel or the court must probe the juror by further questioning until the court is satisfied the initial inference of bias is rebutted. *See State v. Cobb*, 774 P.2d 1123, 1126 (Utah 1989); *Woolley*, 810 P.2d at 442. "Rebuttal of such an inference is accomplished by 'showing that the

statement was merely the product of a "light impression" and not one that would "close the mind against the testimony that may be offered in opposition." ' " *Cobb*, 774 P.2d at 1127 (quoting *Bishop*, 753 P.2d at 451).

■ The trial judge is ultimately responsible to ensure a juror's qualification to remain on the panel. *See State v. Brooks*, 631 P.2d 878, 884 (Utah 1981); *Salt Lake City v. Tuero*, 745 P.2d 1281, 1283 (Utah App.1987). In *Brooks*, the Utah Supreme Court stated that "[w]henever the voir dire evokes a strong emotional response, there is posed a warning that the juror may not have a mental attitude of appropriate indifference to the party or cause before the court." *Brooks*, 631 P.2d at 884; *accord Bishop*, 753 P.2d at 451. The court, thus, must be assured after questioning that the challenged juror has a mental attitude of appropriate indifference.

■ The level of questioning necessary to rebut an initial impression of bias "will vary from case to case and is necessarily dependent on the juror's responses to the questions asked." *Woolley*, 810 P.2d at 445; *accord Cox*, 826 P.2d at 660. Furthermore, a statement elicited by questioning that a juror "intends to be fair and impartial loses its meaning in light of other testimony or facts that suggest a bias." *State v. Hewitt*, 689 P.2d 22, 26 (Utah 1984); *accord Cox*, 826 P.2d at 660.

We have previously addressed the fitness of a prospective juror whose initial statement indicated a bias concerning the testimony of police officers. In *State v. Suarez*, 793 P.2d 934 (Utah App.1990), the defendant appealed a conviction of aggravated assault, asserting the trial court erred in not removing a prospective juror for cause. *See id.* at 938. During voir dire, juror Wolford failed to disclose a pronounced bias in favor of police testimony which he had disclosed to another judge only hours before when questioned to determine his qualifications to serve in another case.[1]

---

**1.** An affidavit stated that juror Wolford indicated during the first voir dire that

he tended to give the testimony of police officers more weight simply because they were police officers, and that he believed police

The court held that "[f]rom all that appears, juror Wolford 'had strong and deep impressions with regard to the veracity of police officers' testimony and would credit a police officer's testimony to an undue extent.' " *Id.* at 939 (quoting *Hewitt*, 689 P.2d at 27). The court held the trial court abused its discretion by not investigating the facial bias further, reversed the conviction, and remanded the case for a new trial. *See id.*

Again, in *Hewitt*, a case concerning the distribution of a controlled substance, the defendant contended the trial court erred in refusing to dismiss two venire members for cause. *See Hewitt*, 689 P.2d at 23. The first prospective juror challenged for cause had been involved in drug investigations while in the army. *See id.* at 25. He stated that "he had friends who were police officers in the military stationed overseas or elsewhere in the United States, but had no friends among local officers." *Id.* The prospective juror also stated that "he had gone to high school ... with one of the detectives on the case, but had no social friends among the local officers." *Id.* Upon questioning by the judge, the prospective juror "unequivocally stated he would look at the facts of the case impartially." *Id.* Furthermore, this juror never stated he would rely more heavily upon or believe police officers over other witnesses. The court concluded that "the trial court did not abuse its discretion in refusing to excuse [the juror] for cause." *Id.* at 26.

The second challenged juror in *Hewitt* stated that "if the evidence came anywhere near being close, then I would feel like the detectives deserve the benefit of the doubt as far as the evidence." *Id.* The juror also said, after a number of exchanges between himself and the trial judge:

I don't want to send anybody that's innocent to the penitentiary, but I also think the police officers work hard and a lot of times their efforts, even though legal, are refuted in court, and I just have a problem with that. I just feel like they

officers were right ninety-five percent (95%) of the time [and that] because of his answer regarding the testimony of police officers,

work awful hard and get only a percentage of the cases.

*Id.* The supreme court stated that the prospective juror's examination by "both the trial judge and defense counsel clearly disclose[d] that [the juror] had strong and deep impressions with regard to the veracity of police officers' testimony and would credit a police officer's testimony to an undue extent." *Id.* at 27. The court concluded the juror should have been dismissed for cause because his responses disclosed strong and deep impressions with regard to police officer testimony, and that "[t]herefore, forcing defendants to use one of their peremptory challenges to remove [the juror] resulted in prejudicial error." *Id.*

Utah courts have also addressed other sources of bias on the part of prospective jurors, basing their determinations on the facts of each case. For example, in *Brooks*, the supreme court examined whether prospective jurors in a burglary case, who had been victims of burglary or armed robbery and assault, could act as impartial jurors. *See Brooks*, 631 P.2d at 882. The prospective jurors both stated they could render a fair verdict, even though they had strong feelings from their previous experiences. *See id.* at 884. The supreme court determined the biases of these individuals had not been rebutted by the trial court's follow-up questioning. *See id.*

In *Crawford v. Manning*, 542 P.2d 1091 (Utah 1975), the plaintiffs brought an action to recover for the wrongful death of their mother. *See id.* at 1092. The supreme court held that a juror who said that she had strong feelings concerning anyone who would sue to recover money for the death of another, although she stated that she could render a bias-free verdict, should have been removed for cause. *See id.* at 1092–93.

*Juror Baumann*

■ Mr. and Mrs. Kavmark both challenged venire member Donald Baumann

Judge Russon excused Mr. Wolford for cause from the venire.
*Suarez,* 793 P.2d at 936.

for cause at trial. However, only Mr. Kavmark claims on appeal that the trial court erred in not removing Mr. Baumann for cause. The trial court declined to dismiss Mr. Baumann for cause, stating: "I'm not going to excuse him for cause. I think he's got some preconceived notions, none of which would apply to this case." Mr. Kavmark alleges Mr. Baumann expressed a bias against defendants in criminal cases and criminal defense attorneys and that the bias was more than just a "light impression." The State asserts that Mr. Baumann's remarks were related only to cases in which criminal defendants escape conviction through procedural defenses or "technicalities" and the trial judge's rehabilitation of Mr. Baumann removed any potential bias.

Near the end of voir dire, the following exchange took place:

MR. BAUMANN: Can I make a statement?

THE COURT: You bet.

MR. BAUMANN: You know, I'm a Bishop in the LDS church, and I have people come to me, you know, I don't have to go after the people, and say, hey, you've done something wrong, and they tell me their wrong. And I guess I would have—and this is nothing against you guys, it's nothing personal. *I guess I would have a tough time being a defense attorney if somebody has committed a crime. I feel that what needs to be done is he needs to come forth, and say I'm guilty, and then accept the punishment as it's put out. I think that a lot of times there's little parts of the law that people who know they are guilty, get off on, and that bothers me.*

THE COURT: I'm sure it bothers a lot of people. But what about the person who believes they truly are not guilty. Are they entitled to come to court?

MR. BAUMANN: I think so. Yeah, I think a person that's not guilty. In fact, I think everybody is entitled to their day in court. But I'll give you a case in point. You know I know Ephraim Fankhauser. When we grew up together, his father ran a jewelry store out in Sugarhouse. One day that jewelry store was robbed, and they took all the jewels. And about two days later they found the two guys with the jewels over in Denver. And they went in, and the jewels were all spread out on the bed, but because they did not have a warrant to enter that room, these two men walked away from that robbery. And they had all the evidence. They did the stealing. There was no question about it in their mind. And to me that's wrong. I think if a guy's committed the crime, he needs to pay the price. I have no idea what these two people have done. If they've done within the law, then they deserve to go free. But, as far as little technicalities in the law, those things bother me. I think that those that are guilty need to be punished.

(Emphasis added.)

The trial judge attempted to rehabilitate Mr. Baumann, explaining that the case did not involve "technicalities" but focused upon whether the Kavmarks intended to defraud the credit card company. Mr. Baumann responded: "I think I would be honest in my evaluation." However, under subsequent questioning by defense counsel, Mr. Baumann made the following statement:

[MR. KAVMARK'S COUNSEL]: Let me ask you another question about the defense lawyers. Do you have a feeling that criminal defense lawyers sometimes do injustice by getting their clients off?

[MR. BAUMANN]: *I don't know that they do injustice to their clients, but I think they do injustice, because I think sometimes there are people that are guilty that get off that are very much guilty of serious crimes.*

(Emphasis added.) Counsel for both Mr. and Mrs. Kavmark then challenged Mr. Baumann for cause.

The question presented is whether Mr. Baumann's impression of bias against criminal defendants and their counsel was a "light impression" sufficiently overcome by the trial judge's lengthy questioning. We are not persuaded that Mr. Baumann's bias was a "light impression." He voluntarily

expressed a deep dislike for those who do not admit guilt. Even after extensive rehabilitative questioning by the trial judge, Mr. Baumann reasserted his strong impression that defense counsel do an injustice because they sometimes "get off" defendants who are guilty of serious crimes. In response to the trial judge's probing, Mr. Baumann's answer that he would be honest in his evaluation and follow the law thus "loses its meaning in light of other testimony or facts that suggest a bias." *Hewitt*, 689 P.2d at 26. We conclude the trial court abused its discretion in failing to remove Mr. Baumann for cause. We, therefore, reverse Mr. Kavmark's conviction and remand for a new trial.

### Juror Cluny

■ Venire members were questioned about their attitudes toward the testimony of police officers because an investigator for the Salt Lake County Attorney's Office was scheduled to testify. Counsel for Mrs. Kavmark challenged venire member Carolee Cluny for cause, based on her statements concerning the testimony of police officers. The trial judge denied the challenge for cause. On appeal, Mrs. Kavmark asserts that Ms. Cluny indicated she was inclined to favor the testimony of police officers, and, thus, the trial court erred by not removing Ms. Cluny for cause.[2] Although recognizing the question of impartiality is a close one, the State argues the trial judge's lengthy dialogue with Ms. Cluny sufficiently rehabilitated her.

Ms. Cluny testified extensively regarding her opinion of police officers. She initially agreed with another prospective juror that the testimony of police officers was more credible, and the court attempted to rehabilitate her.

MS. CLUNY: I have to go along with what she's just said about that.

THE COURT: That you would tend to believe a police officer over another witness?

MS. CLUNY: A person in authority over [one] who's not in authority.

THE COURT: You wouldn't consider what the other person had to say?

MS. CLUNY: I think I would consider, but in the end, if they are in that position of authority I think I probably would—

THE COURT: You think that would tend to give them some greater degree of credibility?

MS. CLUNY: Because of their position, and what they are supposed to carry out in that position, I would give—I would probably give them credit for knowing what they were supposed to do in that position. I would not expect them to act inappropriately in a given position.

Further questioning of Ms. Cluny regarding the testimony of police officers and other professionals was conducted in chambers.

THE COURT: ... First, we talked a couple of times out in the courtroom about your thoughts regarding police officers as witnesses.

MS. CLUNY: Uh-huh (Affirmative).

THE COURT: And I think we need to clear up exactly where you are on that. I think the question I put originally was whether or not any of the prospective jurors would tend to give a police officer's testimony more weight merely because of his or her status as a police officer than a non-police officer. And initially you indicated you thought that might be something you'd want to consider, and then later on, you—

MS. CLUNY: Well, as you talked about it—

THE COURT: You wanted to explain the situation, and I'd like you to.

MS. CLUNY: Well, as you talked about it the second time through, looking at where the people are, what kind of background they would have for that job, I think I probably would give credence to that police officer in the sense that I would expect him to be trained, and not just someone off the street saying, well,

**2.** Mrs. Kavmark similarly argues the trial court erred by failing to remove venire member Dale Morrison for cause. We need not reach this issue in view of our disposition of Mrs. Kavmark's claim regarding Ms. Cluny.

this is how I feel about it. I would expect him to be in a position where he's had that experience.

THE COURT: What if it was a witness who was not a police officer, and had received similar training?

MS. CLUNY: If that information was brought out, and that was presented, he would have that credibility also. If that information is not presented, I would say that the police officer would win still.

During voir dire by counsel for Mrs. Kavmark, the following exchange occurred:

[MRS. KAVMARK'S COUNSEL]: If I hear what you're saying right, you would tend, because you assume that police officers are trained, they occupy a bit of different situation than say you or I if we were observing?

[MS. CLUNY]: Uh-huh (Affirmative).

[MRS. KAVMARK'S COUNSEL]: So the police officer, your honest feeling, without anything being said, is this person has more credibility than the average bystander?

[MS. CLUNY]: Because he's been trained.

[MRS. KAVMARK'S COUNSEL]: Yes.

Based upon our review of the record, the examination by "both the trial judge and defense counsel clearly disclose[d] that [Ms. Cluny] had strong and deep impressions with regard to the veracity of police officers' testimony and would credit a police officer's testimony to an undue extent." *Hewitt*, 689 P.2d at 27. Thus, the trial court abused its discretion in failing to remove Ms. Cluny for cause. We, therefore, reverse Mrs. Kavmark's conviction and remand for a new trial.

JACKSON and RUSSON, JJ., concur.