**STATE of Utah, Plaintiff and Appellee,**

v.

**Celina GRAY, Defendant and Appellant.**

**No. 910521–CA.**

Court of Appeals of Utah.

April 22, 1993.

Eric P. Swenson, Monticello, for defendant and appellant.

Jan Graham and Kris C. Leonard, Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and RUSSON, JJ.

## OPINION

RUSSON, Associate Presiding Judge:

Celina Gray appeals her convictions of five counts of theft, in violation of Utah Code Ann. § 76-6-404 (1990).[1] We affirm.

## FACTS

On appeal from a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in the light most favorable to that verdict, and recite the facts accordingly. *State v. Hamilton*, 827 P.2d 232, 233-34 (Utah 1992) (citations omitted).

On the morning of September 8, 1990, Celina Gray, her two sisters and her mother were arrested in connection with the theft of various items from several stores in Moab, Utah.

Earlier that day, Officer Steve Ross had received a report that certain merchandise had been stolen from a retail clothing shop, Mode-O-Day. During his investigation of the incident, Officer Ross discovered that several other establishments in the same area of Moab were missing merchandise. In all cases, two to four Navajo women entered together, one or more offered to sell Indian items to the store owner or employee while the others browsed, and various items were later found to be missing. Officer Ross obtained the license plate number of the vehicle the four women were using, as well as a description of the four women and the vehicle, and relayed this information to police dispatch.

Officer Ross called Assistant Police Chief Scott Mallon, briefed him on the situation, and requested his assistance. Assistant Chief Mallon located the vehicle at a Circle K and followed the vehicle onto the highway. After verifying that the vehicle description and license plate number matched the information given him by police dispatch, Assistant Chief Mallon stopped the vehicle on suspicion that its occupants were involved with the above thefts.

Assistant Chief Mallon approached the vehicle and asked the driver, one of Gray's sisters, for her driver's license. While waiting for her to produce it, he noticed that a pink shirt which matched the description of one of the items reported missing from Mode-O-Day was lying in a clear plastic bag on the backseat of the car between Gray and her other sister. When Officer Ross arrived, he confirmed that the shirt was the one reported missing from Mode-O-Day.

The suspects were arrested and transported to the Grand County Jail, where they were booked and their clothing and personal belongings were inventoried. Several of the items inventoried were later identified as having been taken from local stores. Among those items were a watch, a shirt and a pair of shorts that Gray was wearing, and a ring that was found in the pocket of Gray's shorts.

After impounding the vehicle, Assistant Chief Mallon unsuccessfully attempted to contact the Grand County Attorney to obtain a search warrant for the vehicle. He then conducted an inventory search, discovering several other items that were later

---

1. The jury found Gray guilty of six counts of theft, one count was a second degree felony, one was a third degree felony, one was a class A misdemeanor, and three were class B misdemeanors. The trial court later arrested judgment on one of the class B misdemeanor convictions. Accordingly, Gray appeals the remaining five convictions.

identified by local merchants as stolen merchandise.

Gray was subsequently charged with six counts of theft, in violation of Utah Code Ann. § 76–6–404 (1990). Gray moved to suppress the evidence seized from the vehicle in which she was a passenger, claiming that the evidence was seized pursuant to an illegal warrantless search in violation of her rights under the Fourth Amendment to the United States Constitution and article I, section 14 of the Utah Constitution. The motion was denied.

At the commencement of trial, during jury voir dire, one prospective juror, Lawrence Jacobs, revealed that he had been employed by the Utah Highway Patrol for four years approximately fifteen years earlier. Gray sought to have him dismissed for cause, but the trial court refused. Gray then used a peremptory challenge to remove him from the panel.

During the course of the trial, the prosecutor asked Assistant Chief Mallon whether Gray had said anything when he told the women that he had stopped the vehicle because they were suspected of certain thefts. Assistant Chief Mallon replied in the negative. Defense counsel objected to this testimony on the ground that such inquiry violated Gray's rights under the Fifth Amendment to the United States Constitution. The objection was overruled.

At the close of all the evidence, Gray moved to dismiss three of the theft counts on the basis of insufficient evidence, which motion was denied.

At the conclusion of the two-day jury trial, Gray moved that a special verdict with interrogatories, instead of a general verdict, be submitted to the jury. The motion was denied. Additionally, over Gray's objection, the trial court gave Jury Instruction number eight, which indicated that possession of stolen property may be considered evidence that the person in possession stole the property.

The jury subsequently found Gray guilty of six counts of theft; however, the trial court granted Gray's post-trial motion to arrest judgment on one of the counts. Gray also filed a motion to disqualify the prosecutor from the sentencing proceedings because of alleged improper conduct during the course of plea negotiations. The trial court denied the motion.

Gray appeals, claiming that the trial court: (1) erred in denying her motion to suppress; (2) abused its discretion in refusing to dismiss prospective juror Jacobs for cause; (3) erred in allowing the prosecutor to inquire, and Assistant Chief Mallon to testify, as to whether Gray said anything when she was told that the vehicle was stopped because its occupants were suspected of certain thefts; (4) erred in denying her motion to dismiss on the basis of insufficient evidence; (5) abused its discretion in denying her motion for a special verdict with interrogatories; (6) erred in giving Jury Instruction number eight; and (7) abused its discretion in refusing to disqualify the prosecutor from the sentencing proceedings.

## WARRANTLESS SEARCH OF VEHICLE

■ Gray argues that the trial court erred in denying her motion to suppress all of the evidence found during the search of the vehicle because such warrantless search violated her rights under the Fourth Amendment to the United States Constitution and article I, section 14 of the Utah Constitution. The State responds that because the search was conducted as a valid inventory search, no warrant was required, and therefore, the trial court properly denied Gray's motion.

"We review the factual findings underlying the denial of a motion to suppress evidence under a 'clearly erroneous' standard, and review the trial court's conclusions of law based thereon for correctness." *State v. Brooks*, 849 P.2d 640, 643 (Utah App.1993) (citing *State v. Brown*, 853 P.2d 851 (Utah 1992)).

■ An inventory search of an automobile is a well-settled exception to the warrant requirements of the Fourth Amendment to the United States Constitution. *See, e.g., State v. Johnson*, 745 P.2d 452, 454 (Utah 1987); *State v. Hygh*, 711 P.2d

264, 267 (Utah 1985); *State v. Sterger,* 808 P.2d 122, 124 (Utah App.1991); *State v. Shamblin,* 763 P.2d 425, 426 (Utah App. 1988); *accord South Dakota v. Opperman,* 428 U.S. 364, 367–76, 96 S.Ct. 3092, 3096–3100, 49 L.Ed.2d 1000 (1976). Such searches are necessary to "(1) protect individual property in police custody; (2) protect police against claims of loss or theft of property; and (3) detect dangerous conditions or instrumentalities within impounded vehicles." *Shamblin,* 763 P.2d at 426 (citing *Johnson,* 745 P.2d at 454). Accordingly, no fourth amendment violation occurs if the officers conduct an inventory search of a properly impounded vehicle[2] in good faith following reasonable, standardized procedures. *Id.* (citing *Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987)). (footnote omitted).

In the case at bar, the trial court correctly determined that the search undertaken here was not violative of Gray's constitutional rights on the basis of the undisputed evidence that, after impounding the vehicle, the officers conducted an inventory search pursuant to the standardized, written inventory policy of the Moab Police Department. Since such inventory searches are valid under the Fourth Amendment, *see Shamblin,* 763 P.2d at 426, barring bad faith on the part of the officers conducting the search, Gray's argument that the said search was improper must fail.

Gray nonetheless argues that the inventory search was improper because it occurred subsequent to Assistant Chief Mallon's unsuccessful attempt to obtain a search warrant. However, without more, this is insufficient to render the said search improper. The Utah Supreme Court addressed this very question in *State v. Earl,* 716 P.2d 803 (Utah 1986). In that case, after stopping a vehicle for traffic violations, the officers discussed the possibility of obtaining a search warrant, but upon learning that the county attorney and both justices of the peace were out of town, decided to conduct an inventory search pursuant to Highway Patrol policy, during which search marijuana was discovered. The trial court granted Earl's motion to suppress evidence of the marijuana, but the Utah Supreme Court reversed, holding that such search was proper. *Id.* at 805. In so holding, the supreme court specifically rejected Earl's argument that the fruits of a valid inventory search must be suppressed where such search follows a failed attempt to acquire a search warrant. *Id.* at 804–05.

*Earl* is dispositive of Gray's objection. Like the officers in *Earl,* the officers here attempted to obtain a search warrant and, when such attempts failed, conducted an inventory search pursuant to the standardized, written inventory policy of the Moab Police Department. Because the facts in this case indicate that the search was executed "in good faith following reasonable, standardized procedures," *Shamblin,* 763 P.2d at 426, the fact that the officers had previously attempted to secure a search warrant does not invalidate the search under the Fourth Amendment to the United States Constitution.[3]

The same result is compelled under article I, section 14 of the Utah Constitution by the Utah Supreme Court's opinion in *Hygh.* Although the search in that case was found to be violative of the defendant's rights, the supreme court specifically stated that an inventory search, if validly conducted, does not offend article I, section 14 of the Utah Constitution. *Hygh,* 711 P.2d at 267. Since the trial court correctly determined that the search in the present case was a valid inventory search, Gray's rights under article I, section 14 were not violated.

■ Additionally, Gray argues that the search is illegal under *State v. Larocco,*

---

**2.** Gray has not argued that impoundment of the vehicle in the case at bar was improper; thus, we do not address that issue.

**3.** Moreover, to rule otherwise would penalize the over-cautious officer for his or her attempts to secure a search warrant and would encourage officers to use the path of least resistance, that is, to conduct an inventory search in every case without attempting to first secure a search warrant. Such result would be clearly contrary to our justice system's preference for warrants. *See, e.g., Illinois v. Gates,* 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983); *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

794 P.2d 460, 470–71 (Utah 1990), because there were no "exigent circumstances" justifying a warrantless automobile search. However, *Larocco* is inapposite to the case at bar. *Larocco*, by its own terms, only applies to the automobile exception to the warrant rule. *Id.* at 467 (citing *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). The present case involves the inventory search exception, not the automobile exception. Accordingly, the *Larocco* requirement that there be exigent circumstances supporting a warrantless search cannot be superimposed on inventory searches such as the one in the case at bar, and thus, *Larocco* simply does not apply here. Accordingly, the trial court did not err in denying Gray's motion to suppress.[4]

### JUROR REMOVAL

■ Gray argues that the trial court abused its discretion in refusing to dismiss for cause a prospective juror, Mr. Jacobs, because he had been employed by the Utah Highway Patrol for four years approximately fifteen years earlier.[5] The State responds that such was insufficient reason to dismiss him, and the trial court did not abuse its discretion in refusing to do so.

"A motion to dismiss a prospective juror for cause is within the sound discretion of the trial court. When reviewing such a ruling, we reverse only if the trial court has abused its discretion." *State v. Kavmark*, 839 P.2d 860, 862 (Utah App.1992) (quoting *State v. Woolley*, 810 P.2d 440, 442 (Utah App.), *cert. denied*, 826 P.2d 651 (Utah 1991)) (citation omitted). "However, it is reversible error to require counsel to use a peremptory challenge 'to remove a prospective juror who should have been dismissed for cause after he or she expressed bias or an inability to be impartial.'" *Id.* (quoting *State v. Wilson*, 771

P.2d 1077, 1083 (Utah App.1989)) (citation omitted).

Rule 18 of the Utah Rules of Criminal Procedure provides that a party may challenge a prospective juror for cause when:

> [A] state of mind exists on the part of the juror with reference to the cause, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging; but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon public rumor, statements in public journals or common notoriety, if it satisfactorily appears to the court that the juror can and will, notwithstanding such opinion, act impartially and fairly upon the matter to be submitted to him.

Utah R.Crim.P. 18(e)(14).

■ In applying Rule 18, Utah appellate courts have consistently required that if a juror makes a statement that facially demonstrates bias or prejudice, further questioning is required in order to satisfy the court that the initial inference of bias is rebutted. *See State v. Cobb*, 774 P.2d 1123, 1126 (Utah 1989); *Kavmark*, 839 P.2d at 862; *Woolley*, 810 P.2d at 442. Such an inference is rebutted by showing that the statement was the product of a "light impression" and not one that would close the mind against testimony offered in opposition. *Kavmark*, 839 P.2d at 862; *accord Cobb*, 774 P.2d at 1127. "The level of questioning necessary to rebut an initial impression of bias 'will vary from case to case and is necessarily dependent on the juror's responses to the questions asked.'" *Kavmark*, 839 P.2d at 862 (quoting *Woolley*, 810 P.2d at 445) (citation omitted).

---

**4.** Gray additionally argues that the trial court's findings are insufficient as to the validity of the warrantless search. We disagree. Because the trial court correctly concluded that the search in the case at bar was a valid inventory search, and because the trial court made adequate findings to support this conclusion, the trial court's findings are sufficient.

**5.** Gray also argues on appeal that Jacobs should have been dismissed for cause because he knew one of the victims and because he "grew up with" the sheriff. Inasmuch as these grounds were not given for Gray's objection below, they are not properly preserved for appeal. *See State v. Cobb*, 774 P.2d 1123, 1126 (Utah 1989).

In the case at bar, the following exchange took place between the court and Jacobs:

THE COURT: Have you, or any members of your immediate family, ever worked for any police departments or do you now, whether it be the High[way] Patrol, the Sheriff, City Police, Fish and Game Department, any of those people?

MR. JACOBS: (Indicating.)

THE COURT: Let['s] see. Mr. Jacobs?

MR. JACOBS: I was a Highway Patrolman years ago.

THE COURT: How long has that been, Mr. Jacobs?

MR. JACOBS: Fifteen years now, I guess.

THE COURT: It's been that long ago?

MR. JACOBS: Yes.

THE COURT: How long were you with the department?

MR. JACOBS: Four years.

THE COURT: Four years. Is there anything in that experience, Mr. Jacobs, that would make you want to give more or less weight to the testimony of police officers as a result of that experience?

MR. JACOBS: No.

THE COURT: You don't think that would influence you in the way you look at the testimony in this case?

MR. JACOBS: No.

At the request of Mr. Swenson, Gray's defense counsel, the trial court later inquired further as to Jacobs's law enforcement background:

THE COURT: He said he was a highway patrolman some fifteen years ago and served four years. Where did you serve those four years?

MR. JACOBS: Three here in Grand County and one in Salt Lake County.

THE COURT: Three here in Grand and one in Salt Lake. Have you had any association with the department, as such, since the time you left the department?

MR. JACOBS: Just that I know—I know the Sheriff. I grew up with him.

THE COURT: But you haven't actually worked or done any investigations or done anything of that sort these past years?

MR. JACOBS: No, sir.

THE COURT: I see. Anything else, Mr. Swenson?

MR. SWENSON: We move that he be stricken for cause.

THE COURT: Well, the court will deny that on the grounds that he tells me he can try this case strictly on the evidence presented. And he hasn't been actively involved with law enforcement for over fifteen years.

■ It is well settled that in order to preserve for appellate review a "for cause" challenge to a prospective juror, counsel must contemporaneously state the reason for the challenge in distinct and specific terms. *Cobb*, 774 P.2d at 1126. Assuming *arguendo* that the fact that defense counsel moved to dismiss Jacobs immediately following the court's further inquiry into his law enforcement background was sufficient to preserve defense counsel's challenge, we are nonetheless unpersuaded that the trial court abused its discretion in refusing to dismiss Jacobs for cause. Any inference of bias raised by Jacobs's admission that he had formerly worked for the Utah Highway Patrol some fifteen years earlier was rebutted by the trial court's careful voir dire of Jacobs. *See id.* Jacobs's answers to the court's further questioning clearly showed that his former occupation as a highway patrolman would not close his mind against the evidence offered in this case. *See Kavmark*, 839 P.2d at 862. Accordingly, we cannot say that the trial court abused its discretion in refusing to dismiss Jacobs for cause.

## INQUIRY AS TO GRAY'S SILENCE

■ Gray contends that the trial court erred in allowing the prosecutor to inquire, and Assistant Chief Mallon to testify, as to whether Gray said anything when she was told that the vehicle was stopped because its occupants were suspected of certain thefts. She argues that such inquiry violated her rights under the Fifth Amendment to the United States Constitution and

constituted prosecutorial misconduct. The State responds that such silence is admissible unless it stems from custodial interrogation, and thus, the trial court did not err in admitting the said testimony.

"Whether testimony is admissible is a question of law, which we review under a correctness standard, incorporating a 'clearly erroneous' standard for the review of subsidiary factual determinations." *State v. Reed*, 820 P.2d 479, 481 (Utah App.1991) (citing *State v. Ramirez*, 817 P.2d 774, 781 n. 3 (Utah 1991)); *accord State v. Gonzalez*, 822 P.2d 1214, 1217 (Utah App.1991). However, "[i]n reviewing a trial court's decision to admit evidence, we will not reverse that ruling unless a substantial right of the party has been affected." *State v. Oliver*, 820 P.2d 474, 479 (Utah App.1991) (citations omitted), *cert. denied*, 843 P.2d 516 (Utah 1992).

The testimony to which Gray objected was the following exchange between the prosecutor, Mr. Anderson, and Assistant Chief Mallon, concerning what occurred after he had stopped the vehicle and noticed the pink shirt that matched the description of the one of the items missing from Mode–O–Day on the backseat of the car between Gray and her sister:

Q: (By Mr. Anderson) Now, after you saw that shirt, what did you do?

A: [By Assistant Chief Mallon] I asked all four of the suspects to go to the rear of the—to get out and step to the rear of the vehicle; step to the sidewalk to the right of the car.

Q: Did they comply?

A: Yes, they did.

Q: Then what did you do?

A: Officer Ross arrived at that time; looked over the females. As I approached them, I advised them that they were stopped because they were suspected of several thefts that had taken place around town.

Q: Was the Defendant one of the people in the vehicle?

A: Yes, she was.

Q: And I think you indicated that she was in the right rear seat?

A: Yes, sir.

Q: When you told them they had been stopped because they were suspected of theft, did the Defendant, Celina Gray, say anything?

A: No, sir.

Defense counsel objected to this testimony, but the trial court overruled his objection. Assistant Chief Mallon later testified that Officer Ross and he subsequently arrested the four women.

In *State v. Morrell*, 803 P.2d 292 (Utah App.1990), we addressed the question of whether evidence of the silence of a person who has not been formally arrested is admissible, holding that evidence of such silence is admissible unless it stems from custodial interrogation of the defendant. *Id.* at 296–97. Whether a person who has not been formally arrested is subject to custodial interrogation depends upon five factors: "(1) the site of interrogation; (2) whether the interrogation focused on the accused; (3) whether the objective indicia of arrest were present; ... (4) the length and form of interrogation[; and] (5) whether the defendant came to the place of interrogation freely and willingly." *Id.* (quoting *State v. Sampson*, 808 P.2d 1100, 1105 (Utah App.1990), *cert. denied*, 817 P.2d 327 (Utah 1991), *cert. denied*, ─── U.S. ───, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992)).

As an initial matter, we cannot say that Assistant Chief Mallon's actions in the case at bar amounted to an "interrogation." He did not ask Gray, nor any of the other women, any questions whatsoever, and the only exchange between the parties was a statement by Assistant Chief Mallon to the four women concerning the reason for the stop.

■ Moreover, application of the *Morrell* factors to the facts of this case also demonstrates that Gray was not subject to custodial interrogation at the time in question here. First, the statement made by Assistant Chief Mallon did not focus on Gray, but on all four women present. Second, Gray has not argued, and our review of the record has not revealed, that any objective indicia of arrest were present. Third, the exchange was exceptionally brief

and explanatory in nature. Fourth, Gray came to the place of the encounter under her own volition, not because she had been transported there by the police. Thus, we conclude that Gray was not subject to custodial interrogation at the time to which Assistant Chief Mallon's testimony refers. It follows therefore that the trial court did not err in admitting Assistant Chief Mallon's testimony concerning Gray's silence.[6]

## MOTION TO DISMISS

■ Gray claims that the trial court's failure to grant her motion to dismiss two counts of theft because of insufficient evidence was error.[7] The State responds that Gray has failed to marshal the evidence in regard to this matter, and that the evidence was sufficient to support the inclusion of the counts, as well as to support her convictions by the jury.

As to a trial court's decision to send a case to the jury, the Utah Supreme Court has stated that "[w]e will uphold the trial court's decision if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989) (citations omitted). Furthermore, it is well settled that in order to "raise a challenge based on insufficiency of the evidence, the appellant must marshal all evidence supporting the trial court's conclusion. Then the appellant must show how the marshaled evidence, including all reasonable inferences drawn therefrom, is legally insufficient to support the trial court's conclusion." *State v. D.M.Z.,* 830 P.2d 314, 317 (Utah App.1992) (citing *State v. Moosman,* 794 P.2d 474, 475–76 (Utah 1990)); *accord State v. Burk,* 839 P.2d 880, 886 (Utah App.1992). If the appellant fails to do so, we assume the trial court's findings are adequately supported by the record. *Burk,* 839 P.2d at 886.

In the case at bar, not only does Gray fail to marshal the evidence in support of the trial court's denial of her motion to dismiss, but she does not even marshal the evidence in opposition to it, instead simply rearguing her motion to dismiss without any reference to the record in this case. Such is plainly insufficient to meet our marshaling requirements. Thus, we must assume that the evidence supported inclusion of these counts. Accordingly, Gray's argument that the trial court improperly denied her motion to dismiss fails.[8]

## MOTION FOR SPECIAL VERDICT WITH INTERROGATORIES

■ Gray contends that the trial court abused its discretion in denying her motion for a special verdict with interrogatories, citing *State v. Bell,* 770 P.2d 100, 109 (Utah 1988). The State responds that such was not necessary under the facts of this case, and that therefore the trial court did not abuse its discretion in refusing to give the same.

Utah Rule of Civil Procedure 49 permits the use of special interrogatories, and is made applicable to criminal cases by Utah

---

6. Additionally, as to Gray's claim that eliciting this testimony from Assistant Chief Mallon constituted prosecutorial misconduct, such claim plainly fails. In order to prevail on a prosecutorial misconduct claim, Gray must show (1) misconduct by the prosecutor, and (2) resulting prejudice to her. *See State v. Vigil,* 840 P.2d 788, 795 (Utah App.1992) (citing *State v. Span,* 819 P.2d 329, 333–36 (Utah 1991)). Since the testimony was determined to be admissible, the eliciting of the same is plainly not misconduct on behalf of the prosecutor. This is especially true since the prosecutor made no further inquiry as to Gray's silence, this testimony was not commented on by the prosecutor in closing argument, nor was it ever mentioned again.

7. At trial, Gray moved to dismiss three of the theft counts on the basis of insufficient evidence. However, the trial court subsequently arrested judgment on one of those counts. Consequently, Gray only appeals the trial court's failure to grant her motion to dismiss as to the other two counts.

8. Moreover, our cursory review of the record reveals that the evidence, taken as a whole, is sufficient to support a reasonable jury's conclusion that the elements of theft had been proven beyond a reasonable doubt. Thus, the record supports the inclusion of these counts, and even had Gray properly marshaled the evidence on appeal, her claim nonetheless fails.

Rule of Civil Procedure 81(e). *State v. Allen*, 839 P.2d 291, 298 and n. 12 (Utah 1992) (citing *Bell*, 770 P.2d at 109). "However, it lies within the broad discretion of the trial court to determine if special interrogatories are to be used and, if so, the content thereof." *Id.* at 298 (footnote omitted).

■ We conclude that *Bell* is wholly inapplicable to the case at bar. First, the language relied upon by Gray in *Bell* is dicta, since the Utah Supreme Court specifically noted in its opinion that it was not reaching that claim of error. *Bell*, 770 P.2d at 109. Moreover, the supreme court further noted that it was only suggesting the use of special verdicts with interrogatories in cases involving Utah's racketeering and criminal enterprise statute because of the confusing nature of that statute. *Id.* Here, although there was testimony regarding several different thefts, we cannot say that this lead to such a level of confusion that the use of a special verdict with interrogatories was necessitated. Lastly, the supreme court in *Bell* specifically warned: "[N]othing in this opinion should be taken to suggest that trial courts must invariably use special verdicts or interrogatories.... We only observe that they are helpful and may be particularly appropriate [in some cases]." *Id.* at 109 n. 19. Accordingly, given the fact that such verdicts are not compelled, and are only recommended in highly confusing cases, the trial court did not abuse its discretion in refusing to give a special verdict with interrogatories in the instant case.

## JURY INSTRUCTION NUMBER EIGHT

■ Gray argues that it was error for the Court to give Jury Instruction number eight, claiming that it raised a presumption of guilt. *See State v. Chambers*, 709 P.2d 321 (Utah 1985). The State responds that the said instruction did not raise a presumption of guilt, and correctly stated the

law, and therefore the trial court properly gave that instruction.[9]

We have previously stated: "[B]eyond the substantive scope, correctness, and clarity of the jury instructions, their precise wording and specificity is left to the sound discretion of the trial court." *State v. Sherard*, 818 P.2d 554, 560 (Utah App. 1991) (quoting *State v. Aly*, 782 P.2d 549, 550 (Utah App.1989)), *cert. denied*, 843 P.2d 516 (Utah 1992). "However, the said instructions must not incorrectly or misleadingly state material rules of law." *Id.* (citing *Aly*, 782 P.2d at 550).

Jury Instruction number eight reads:

Possession of property recently stolen, with no satisfactory explanation of such possession, may be considered evidence that the person in possession stole the property.

You have heard evidence that items of property alleged to have been taken by defendant were found on the person of defendant or found in an automobile occupied by defendant or in containers which were in close proximity to defendant. In determining whether defendant possessed the property in question, you must consider the evidence as it specifically relates to her.

Defendant could possess property by having it in her actual possession, or by having constructive possession of the property.

Constructive possession occurs when there is a sufficient connection between the defendant and the property to permit an inference that defendant had both power and intent to exercise dominion and control over the property. Knowledge of the whereabouts of property and access to it does not equal possession if there is no intent to use that knowledge and access.

Possession need not be exclusive, but may also be found where property is

---

9. Gray additionally argues on appeal that Jury Instruction number eight is improper for several reasons that were not raised before the trial court. However, it is settled law that in order to preserve an objection to a jury instruction for appeal, a defendant must "object[ ] thereto before the jury is instructed, stating distinctly the matter to which [she] objects and the grounds of [her] objection." Utah R.Crim.P. 19(c); *accord State v. Perdue*, 813 P.2d 1201, 1203 (Utah App. 1991). We therefore only address Gray's presumption objection on appeal.

under the joint control and dominion of defendant and others. Possession may be indicated by (1) proximity to defendant, (2) her presence at the time it is found, with emphasis on the fact that it is in plain or open view, (3) evidence indicating joint enjoyment of the property with other[s], or (4) evidence connecting defendant with the acquisition of the property.

In *Chambers*, the Utah Supreme Court held that an instruction that raises a presumption of guilt, and thereby impermissibly shifts the burden to the defendant to prove his innocence, is unconstitutional. *Chambers*, 709 P.2d at 325–27; *see also State v. Smith*, 726 P.2d 1232, 1234 (Utah 1986) ("An instruction that simply incorporates the statutory language is unconstitutional when the statutory term *'prima facie'* is defined as a presumption....”). However, unlike *Chambers*, the jury instruction in question in the case at bar, Jury Instruction number eight, did not raise an impermissible presumption of guilt. In fact, by its plain language, it only states that possession of stolen property *"may be considered evidence* that the person in possession stole the property." Furthermore, it states that in determining whether Gray possessed the property in question, the jury must only consider the evidence as it specifically relates to her. Thus, Jury Instruction number eight does not raise a presumption of guilt, while correctly stating the law. Accordingly, we hold that it was proper for the trial court to give that instruction. *See Sherard*, 818 P.2d at 560–61.

## FAILURE TO DISQUALIFY PROSECUTOR

■ Gray argues that the trial court abused its discretion in refusing to disqualify the prosecutor, Lyle R. Anderson, from the sentencing proceedings for certain remarks he made during the course of plea negotiations, and seeks re-sentencing with a new prosecutor. The State responds that Anderson did nothing more than engage in typical plea negotiations and committed no misconduct, and that the trial court there-

fore did not abuse its discretion in denying Gray's motion to disqualify him.

Trial courts are given broad discretion to control the conduct of attorneys in matters before the court. *Margulies v. Upchurch*, 696 P.2d 1195, 1199 (Utah 1985). The ultimate decision to grant or deny a motion to disqualify counsel is within the trial court's discretion, and we will not overturn that decision absent an abuse of that discretion. *Id.* at 1200.

In her motion to disqualify Anderson, Gray stated that he:

said, in substance, that he was disturbed by both the time and expense necessarily incurred by Grand County for separate trials and billings for services by defense counsel, as well as the apparent time and expense involved with [Gray's defense counsel's] numerous motions. Attorney Anderson then said that he would dismiss all remaining charges upon entry of a plea of guilty by each Defendant to one third degree felony. He further stated that if each Defendant refused this offer and elected to undertake a defense at trial, that he would seek convictions as to each Defendant as to all of the pending charges, and that he would recommend to the Court that each defendant be jailed as punishment for the offenses, and that this recommendation would be given to the Court regardless of whether the defendants were convicted of misdemeanors or felonies.

The United States Supreme Court has stated that although it is patently unconstitutional to penalize a person for exercising his or her constitutional rights, "in the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (citations omitted). "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system

which tolerates and encourages the negotiation of pleas.'" *Id.*, 434 U.S. at 364, 98 S.Ct. at 668 (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31, 93 S.Ct. 1977, 1985, 36 L.Ed.2d 714 (1973)). Thus, it follows that by allowing and encouraging plea negotiation, we have accepted as constitutionally legitimate "the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his [or her] right to plead not guilty." *Id.*

Although we do not fully endorse Anderson's tactics, we are unable to say that the trial court abused its discretion in determining that they were not beyond the bounds of propriety. Anderson made no misrepresentation in presenting his plea bargain, did not deprive Gray of her right to a jury trial, and did not punish her for exercising that right. And although Anderson told Gray that he would recommend to the trial court more severe punishment for her if she did not cooperate, such must be viewed as a necessary and permissible attribute of our legal system. *See id.*

Further, to grant Gray's motion simply because Anderson informed her that he would take certain actions if she did not plead guilty, actions that were within the bounds of his rights as prosecutor, would be to stifle a prosecutor's right, or some would even say "duty," to present both possible outcomes in plea negotiations. "[A] rigid constitutional rule that would prohibit a prosecutor from acting forthrightly in his dealings with the defense could only invite unhealthy subterfuge that would drive the practice of plea bargaining back into the shadows from which it has so recently emerged." *Id.*, 434 U.S. at 365, 98 S.Ct. at 669 (citation omitted). Thus, we are unwilling to label Anderson's actions in the case at bar improper conduct.[10]

Moreover, it is a fundamental rule of our criminal justice system that conduct by a prosecutor that is at odds with a defendant's rights will be disregarded on appeal "unless we find that it affected a substantial right of the defendant." *State v. Ford*,

793 P.2d 397, 402 (Utah App.1990) (citations omitted). Such conduct will be found to be prejudicial only if, absent the misconduct, "there is a reasonable likelihood of a more favorable outcome for the defendant...." *Id.* (quoting *State v. Lafferty*, 749 P.2d 1239, 1255 (Utah 1988)).

In the case at bar, Gray has not demonstrated any prejudice to her by Anderson's presence at the sentencing hearing, nor that there was a likelihood of a more favorable outcome for her if Anderson had not been present. In fact, to the contrary, we note that at the sentencing hearing, Anderson stated that the presentence report's recommendation of six months in jail was, in his opinion, too long for Gray, recommending sixty days instead. Thus, we conclude that the trial court did not abuse its discretion in denying Gray's motion to disqualify the prosecutor.

Reviewing the other issues raised by Gray on appeal, we find them to be without merit, and therefore decline to address them. *See State v. Vigil*, 840 P.2d 788, 795 (Utah App.1992) (citing *State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989)).

## CONCLUSION

In conclusion, we hold that the trial court: (1) did not err in denying Gray's motion to suppress the evidence found during the search of the vehicle because such was the product of a valid inventory search; (2) did not abuse its discretion in refusing to dismiss prospective juror Jacobs for cause; (3) did not err in allowing the prosecutor to inquire, and Assistant Chief Mallon to testify, as to whether Gray said anything when she was told that the vehicle was stopped because its occupants were suspected of certain thefts; (4) did not err in denying Gray's motion to dismiss on the basis of insufficient evidence; (5) did not abuse its discretion in denying Gray's motion for a special verdict with interrogatories; (6) did not err in giving Jury Instruction number eight; and (7) did not abuse its discretion in refusing to disquali-

---

**10.** Additionally, given the practical concern that courts should, as a matter of principle, avoid getting overly involved in plea negotiations, we

cannot say that the trial court's refusal to do so by granting Gray's motion in this case constituted an abuse of discretion.

fy the prosecutor from the sentencing hearing. Accordingly, Gray's convictions are affirmed.

BILLINGS and GREENWOOD, JJ., concur.